WERFEL and others *against* The Commonwealth.

IN ERROR.

1812.

Lancaster,
Saturday,
May 30.

THE plaintiffs in error were indicted in the Quarter Sessions of *Lancaster* county, for that, " on the 5th " of *April* 1810, at the township of *Conostogoe* in the said " county, with force and arms they did erect, build, set up, " repair and maintain, and did assist and abet in erecting, " building, setting up, repairing and maintaining a certain " *mound*, made of logs and stones, of the height of seven " feet, and length of eighteen yards, commonly called a fish- " ing battery or wharf, in the river *Susquehanna*, in that " part thereof declared to be a public highway, to wit, be- " tween *Burkholder's* island, and the eastern shore of the " said river, in the said township and county, *for the taking* " *of fish in the said river;* and the said mound, made and " erected as aforesaid, from the said fifth day of *April*, until " the day of taking this inquisition, with like force and arms, " at the township aforesaid have kept up and still do keep " up, *to the great obstruction and hinderance of the fish, fry* " *and spawn in passing up and down said river, and to the* " *common nuisance of all the liege citizens of this common-* " *wealth*, contrary to the acts of the General Assembly in " such case made and provided &c." To this they pleaded Not Guilty; and upon conviction the sentence of the court was, that the defendants " should pay each a fine of ten " pounds to the commonwealth, pay the costs of prosecution, " abate the nuisance, and stand committed till the sentence " was complied with."

Upon a writ of error from this court, the defendants below assigned for error:

1. That no *venire facias juratores* issued to return a jury *going up said river &c.* and therefore a judgment that the fine shall be paid to the commonwealth, instead of going to the informer and commissioners in that section mentioned, is erroneous.

If the record of the court below set forth, that before a bill of indictment was submitted to the grand jury, the sheriff had returned the precept to him directed, in all things duly executed, and so in like manner as to the petit jury, by whom the prisoner was tried, it it sufficient, without stating the precept and return at large; nor can it be alleged for error, that no precept was issued.

Where an act of assembly appropriates in a certain way, a fine to be inflicted upon persons convicted of a certain offence, it is error if the judgment appropriates it in a different way. An indictment for erecting &c. a *mound*, made of logs and stones, in the river *Susquehanna, for the taking of fish in the said river, to the great obstruction and hinderance of the fish, fry and spawn in passing up and down said river, and to the common nuisance of all the liege citizens &c.* is within the 4th section of the act of the 9th of *March* 1771, which prohibits the erection &c. of any wear, rack, basket, dam, pound, *or other device or obstruction whatsoever, whereby the fish may be obstructed from*

1812.

WERFEL
et al.
*v.*
COMMON-
WEALTH.

at the sessions, when the indictment was found, nor when the indictment was tried.

In relation to this exception, the record stated that a *precept* had been returned by the sheriff, in all things duly executed, " whereupon the following persons were sworn and " affirmed as grand inquest" &c.; and so in like manner as to the petit jurors who tried the indictment; but no *venire facias* with the panels was set forth, or annexed, with the sheriff's return.

2. That the indictment was defective; especially, that the offence described was not within the act of assembly, upon which the indictment was founded.

3. That the judgment rendered was not warranted by the act of assembly upon which the indictment was founded, or by any other act, or by the common law.

*Montgomery* and *C. Smith* for the plaintiffs in error.

1. The first section of the act of 29th *March* 1805, 4 *Smith's Laws* 237, directs, that after jurors are drawn from the wheel, the usual *venire* shall be made out by the prothonotary, and delivered to the sheriff, who shall summon the persons named at least ten days before the first day of the court; and by the seventh section, the sheriff is commanded, upon return of the *venire,* to annex a panel to the writ, containing the christian and surnames, additions and places of abode of a competent number of jurors &c. This record does not state a *venire,* nor a panel, and therefore this court cannot say that the act has been complied with. *Non constat* that the precept stated, was the *venire* required by law. The objection was taken in the *Commonwealth* v. *Hoofnagle* (a) and sustained.

2. The offence described is not within the act of assembly. That act was passed on the 9th of *March* 1771. The first section makes the *Susquehanna,* " as far down as *Wright's* " ferry," a public stream and highway for the purposes of navigation; and it declares that all obstructions and impediments " to the passage of his majesty's subjects up and down " the same," shall be deemed common nuisances. 1 *Smith's Laws* 324. The act of 31st *March* 1785, 2 *Smith's Laws* 312,

(a) *Brown's Rep.* 201. *note.*

makes that river a highway in all parts of this state. Now the indictment is not within this section, because it does not state the mound to be an obstruction to the navigation, or passage of any of the citizens of this commonwealth; but that it was made for the purpose of taking fish, and to their hindrance and obstruction. It must therefore come under the fourth section of the act of 1771, if any. That section punishes in a particular manner any person who shall erect &c., any " wear, " basket, dam, pound, or other device or obstruction," within the said river, or that shall fasten any net or nets across the same, whereby the fish may be obstructed from going up. But the offence laid in the indictment is the erection of a *mound, fishing battery*, or *wharf*, not averring it to be a *device* or obstruction, within the meaning of that act. The general rule is, that the offence charged must be brought within the material words of a statute. 2 *Hawk. P. C.* 249. *sec.* 110.

3. But if within the fourth section, the judgment is erroneous. The act of 1771, fines the offender 5*l.*, one moiety to the informer, the other to the commissioners f the river, for the purpose of clearing it. This is doubled by the act of 1785. Here is a new offence created, with a specific remedy; it can therefore be punished only as the act prescribes. *Rex* v. *Robinson* (*a*). But the judgment gives the fine to the commonwealth. It also requires the defendants to abate the nuisance, which they cannot do by reason of the imprisonment. The commissioners are required by the second section of the act of 1771, to remove the nuisance; it was therefore their duty.

*Jenkins* and *Hopkins* for the commonwealth.

1. The first exception is that no *venire* issued, not that it has been irregularly executed. Now the record does state that it issued and was duly executed. It is in the usual form, the *venire* and panel never being set out, upon the return to a writ of error. The case of the *Commonwealth* v. *Hoofnagle*, was in the Oyer and Terminer, not in the superior court. This exception is therefore in contradiction to the record.

2. The indictment is founded upon the first section of the act of 1781. The river is laid to be a highway; all ob-

1812.

WERFEL
et al.
*v*
COMMON-
WEALTH.

(*a*) 2 *Burr.* 803.

structions in it are common nuisances by the act; and this mound is so described as to shew it is an obstruction to the passage of the citizens. It is expressly stated to be to their common nuisance. It may be supported also under the fourth section, for it shews what is both a device and obstruction, and by description brings the offence within that section, which is as well as if it had been done by averment.

3. The exception as to the abatement of the nuisance, has no force. It is part of every sentence in cases of common nuisance; and the party's imprisonment does not stand in his way, as he may execute the order by an agent. The argument proves too much. A felon is always adjudged to restore the stolen goods; but he has not them in gaol with him. The only mode of enforcing any part of the sentence is by imprisonment. As to the fine to the commonwealth, it is a proper part of the sentence, under the first section, which does not specify the punishment, but leaves it at common law.

TILGHMAN C. J. The error assigned, that no *venire facias* issued in this case, is contradicted by the record. For it is set forth in the usual manner, that the sheriff returned the precept to him directed duly executed. I do not think it necessary to be more particular on this point, as my opinion is founded on another part of the record. The indictment is for erecting a mound in the river *Susquehanna*, of the height of seven feet, the length of eighteen yards, and the breadth of fifteen yards, commonly called a *fishing battery or wharf*, for the purpose of taking fish in the said river, " to the great " obstruction and hindrance of the fish, fry and spawn in " passing up and down said river, and to the common nui- " sance of all the liege citizens of this commonwealth." It is enacted by the. act of 9th *March* 1771, sec. 1. that the river *Susquehanna* as far down as *Wright's* ferry, shall be a public stream and highway, and, " that all impediments and " obstructions to the passage of his majesty's liege subjects " up and down the same, erected or hereafter to be erected, " should be deemed, held, and adjudged common nuisances." And by another act of 31st *March* 1785, the whole river throughout its course, from the *Maryland* line upwards is made a public highway. By the fourth section of the act of 1771, if any person shall erect " any wear, rack, basket,

"dam, pound, or other device or obstruction within the said "river, or shall fix or fasten any net across the same or any "part thereof, whereby the *fish* may be obstructed from go- "ing up the said river," he shall upon conviction, forfeit and pay the sum of 5*l.* or suffer three months imprisonment, one moiety of which forfeiture shall be paid to the informer or prosecutor, and the other moiety to the commissioners for the said river, to be applied towards clearing the said river; this penalty was increased to 10*l.* by the act of 1785. The judgment in this case is that the defendants shall each pay a fine of 10*l.* to the commonwealth, pay the costs of prosecution, abate the nuisance, and stand committed till the judgment is complied with. If the indictment is founded on the fourth section of the act of 1771, the judgment certainly cannot be supported; for without mentioning other objections, it is wrong in not appropriating the penalty according to the provisions of that section. But it is contended by the counsel for the commonwealth, that it is a good indictment under the first section, by which the river is declared to be a public highway, and no particular penalty affixed for its obstruction. I am not quite satisfied that the penalty in the fourth section, is not attached to every kind of nuisance embraced by the first section, for it is difficult to conceive a nuisance that is not an obstruction. But without giving an opinion as to that, it is clear that this indictment is founded and may be supported on the fourth section, for it describes the mound erected in the river in such a manner, as shews it to be a palpable and great obstruction, and expressly declares it to be an obstruction to the *fish* in passing up and down the river; and what is more, it is not said to be an obstruction to *persons* passing up and down the river, although it is said to be to the common nuisance of the citizens of the commonwealth. Now suppose that the indictment may be good both under the fourth and first sections, which may very well be the case, because undoubtedly many of the acts described in the fourth section, fall within the provision of the first, the court would then be obliged to appropriate the penalty according to the *fourth section*, otherwise the intention of the law would be plainly violated. Besides we have an act of assembly by which it is forbidden to inflict a punishment at common law, in any case in which there is a

punishment prescribed by act of assembly. I am therefore of opinion, that inasmuch as the offence described in the indictment falls within the fourth section, the judgment should have been conformable to the same section. It is consequently erroneous and must be reversed.

YEATES J. The first error assigned, is that no *venire facias juratores* issued to return a jury at the sessions, when the indictment was found, nor at the sessions when the indictment was tried.

Facts are stated in this exception, which are in direct contradiction to the record returned. It appears thereby, that before the bill was submitted to the grand jury, the sheriff had returned the precept to him directed, in all things duly executed, whereupon the following persons were sworn and affirmed as grand inquest. An entry of the like nature is made as to the petit jury. The precept to summon either the grand or traverse jurors, is never returned with the record. When it is made up in proper form, the award of process for summoning the juries only appears, as will be seen in the record of an indictment and conviction of murder, at the assizes, drawn up at large in 4 *Bla. Com. Appen. 4.* It is not competent to the plaintiffs in error, to assign for error, facts which are in direct opposition to the record which is returned. They are concluded thereby; and when the sessions have returned to this court, that the precepts for returning the juries have been in all things duly executed, we are bound thereby, and will look no further in order to reverse the conviction of a jury, and the judgment rendered thereupon.

The second error assigned is that the indictment is defective; and especially that the offence described is not within the act of assembly upon which the indictment is founded.

The act alluded to, is that passed on the 9th of *March* 1771, 1 *Dall. St. Laws* 556, which has two professed objects in view; the one to declare certain parts of the river *Susquehanna* and other streams public highways, for the purposes of navigation up and down the same, the other for the preservation of the fish therein. The first section of the act refers to the former object, declaring that all obstructions and impediments to the passage up and down the same, erected or thereafter to be erected, shall be deemed, held and adjudged

common nuisances. It imposes no specific fine, but leaves the offenders to be punished as at common law for a nuisance. The fourth section was calculated for the preservation of the fish and spawn, and inflicts a penalty of 5*l.*, or three months imprisonment, on any person who shall be convicted before any justice of the peace of the proper county, of erecting or maintaining, or aiding or assisting therein, any wear, rack, basket, dam, pound, or other device or obstruction whatsoever, within the said rivers or streams, or any of them; " one " moiety of the forfeiture to be paid to the informer or pro- " secutor, and the other moiety to the commissioners for " the respective rivers or streams, to be applied towards " clearing them."

1812.
WERFEL et al.
*v.*
COMMON-WEALTH.

A subsequent law passed the 31st of *March* 1785, *sec.* 6, doubles the specific penalties prescribed by the former act, and declares that offenders under it shall be prosecuted in the Court of Quarter Sessions of the peace of the proper county, and not in a summary way. 2 *Dall. St. Laws* 292.

It becomes necessary to ascertain under which of the sections of the original act, this indictment was framed. Several precedents are to be found in the books, of indictments for nuisances in highways and navigable rivers, and on recurrence to them it will be found, that after laying the obstruction, they uniformly proceed in either saying, " so " that the liege subjects &c. in and through the said high- " ways, with their horses, carts, and carriages, could not pass, " ride, and labour, as they ought to do, and were accustom- " ed," or conclude, " to the common nuisance of all the liege " subjects &c. in and through the said common highway, " with their boats, ships, and other vessels, about their neces- " sary business with their goods, chattels, and merchandizes, " sailing and labouring &c." Among other precedents, see *West's Symbol.* sec. 159. *Off. Cler. pac.* 162. 201., *Term Pl. Cor.* 196., *Stubb's Cro. Circ. Comp.* 288, 289, 290. 292, 293, 294. 296. 300.

In this instance, I apprehend the indictment is formed on the fourth section of the law, pursuing the words thereof minutely, except that it states the defendants to have erected a certain *mound* (without averring it to be a *device* within the act) *for the taking of fish in the said river*, and kept up the same, *to the great obstruction and hinderance of the fish*,

*fry and spawn in passing up and down said river &c.* Unless a defect may be ascribed to the indictment for want of this averment, concerning which I deem it unnecessary to express any opinion, an offence against this section is clearly described.

An indictment would certainly lie for obstructing the river *Susquehanna* in such parts of it as are declared highways, and the common law would warrant a judgment like the present, on a conviction thereon. If one be convicted of a nuisance done to the highway, he shall be commanded by the judgment to remove the nuisance at his own costs. 2 *Rol. Abr.* 84, *pl.* 15., 1 *Hawk.* 200, (*fol. ed.*) Indeed in *Rex* v. *Pappineau*, (1 *Stra.* 686., 2 *Sess. Ca.* 39.) it was contended that the judgment was erroneous, for want of an adjudication, that the nuisance should be abated, that being the end of the law in such prosecutions, and avoiding a multiplicity of actions. The majority of the court got rid of the objection, by saying that it was not a permanent nuisance, but that the injury to the public, arose from the abuse of the mole, in dipping stinking sheep skins in it. They all however agreed, that where the erection is the nuisance, there ought to be a demolition.

I see no force in the remark, that the judgment amounted to an imprisonment for the lives of the plaintiffs in error, inasmuch as they could not, while they remained in the gaol, abate the nuisance by their own personal efforts. The same observation would be applicable, where a fine was imposed for an offence committed by a poor man, who earns his bread by his daily labour, or where a horse thief convicted, has been adjudged to restore the horse stolen to the owner, the object feloniously taken being at a distance. It is the invariable rule in judgments for criminal offences, that the parties stand committed till the judgment be complied with. If the fine is paid by others, or the stolen horse be returned by a third person, in the instances which I have put, or the obstruction here be removed by the instrumentality of the defendant's servants, it could not be denied that the judgments would be so far executed.

The error however in this record consists in the judgment not being conformable to the act of assembly. The offence laid in the indictment is clearly, in my idea, against

the provisions of the fourth section. It does not necessarily follow, that a mound for taking fish is an obstruction of the navigation of the river; I can readily conceive that a device of such a nature may be constructed, which though it may destroy the fish, fry, and spawn, may really improve the navigation, by swelling the water in shallow parts of the channel, where boats usually pass. The defendants here are fined severally 10*l.* for the use of the commonwealth; but the act directs that one moiety of the forfeiture shall go to the informer or prosecutor, and the other moiety to the commissioners for clearing the river. In this particular I am of opinion that the judgment is erroneous, and ought to be reversed.

BRACKENRIDGE J. was sick during the argument, and gave no opinion.

Judgment reversed.